CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 2 5 2008

JOHN F. CORCORAN, CLERK
BY: J. Bright
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| VICKI S. WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7:07CV00290 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| MICHAEL J. ASTRUE, ) | By: Hon. Glen E. Conrad |
| Commissioner of Social Security ) | United States District Judge |
| ) | |
| Defendant. ) | |

The plaintiff filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") denying the plaintiff's claim for disability insurance benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff was not under a disability at any time prior to the final decision of the Commissioner. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Laws v. Celebrezze, 386 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

The plaintiff, Vicki S. Williams, was born on December 6, 1958. Ms. Williams was graduated from high school. She has been employed as an assembler and an electroplater. She

last worked on a regular basis in 2003.[1] Ms. Williams filed an application for disability insurance benefits on April 6, 2004. She alleged that she became disabled for all forms of substantial gainful employment on January 24, 2003, due to low back pain, right leg and hip pain, migraines, and depression. Ms. Williams maintains that she has remained disabled to the present time. The record reflects that Ms. Williams met the insured status requirements of the Act through the date of the Commissioner's decision.[2] See generally, 42 U.S.C. § 423.

Ms. Williams's claim was denied upon consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated June 12, 2006, the Law Judge also determined that Ms. Williams is not disabled. The Law Judge found that Ms. Williams suffers from degenerative disc disease, degenerative joint disease of the lumbar spine, and affective disorder.[3] The Law Judge then determined that, while these impairments are severe within the meaning of the regulations, none of them, considered singly or in combination, meets or medically equals one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. See 20 C.F.R. § 404.1520(c)-(d). Nevertheless, because of these impairments, the Law Judge ruled that Ms. Williams is disabled for her past relevant work roles. Based on Ms. Williams's impairments, the Law Judge determined that the

---

[1] Although Ms. Williams alleged that she became unable to work in January of 2003, the record indicates that she continued to earn some job-related income during 2003 and into 2004 (TR 17, 53). She also received unemployment compensation during 2004 (TR 363) and workers' compensation benefits (TR 17). Nevertheless, the Administrative Law Judge determined that any work performed after Ms. Williams's alleged onset date constituted an unsuccessful work attempt and did not constitute substantial gainful activity. (TR 17).

[2] Ms. Williams will continue to meet the insured statuts requirements of the Act through December 31, 2008. (TR 17).

[3] The Law Judge also noted that Ms. Williams's migraine headaches have apparently been controlled and that there is no current treatment documented in the record for any such complaints. (TR 18). Therefore, the Law Judge determined that Ms. Williams's migraine headaches do not constitute a severe impairment within the meaning of 20 C.F.R. § 404.1521. (TR 18).

2

plaintiff retains the residual functional capacity to perform a limited range of light work activity.

Specifically, the Law Judge assessed the plaintiff's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry up to 20 pounds occasionally and ten pounds frequently; stand and/or walk six hours overall in an eight hour workday; sit the entire workday changing positions hourly, and is limited to frequent pushing and/or pulling with her lower extremities bilaterally. She should avoid climbing ropes, ladders and scaffolds; can frequently but not repeatedly tolerate other forms of climbing, crouching, squatting and stooping. She should avoid concentrations of vibration to the lower back and legs and rough terrain. She cannot do overhead work.

(TR 18). Furthermore, with regard to Ms. Williams's emotional impairment, the Law Judge added that:

> The evidence supports a finding that the claimant's psychologically based impairments cause mild restriction in activities of daily living; mild difficulties in maintaining social functioning; and moderate deficiencies of concentration, persistence or pace.

(TR 18).

Given such a residual functional capacity, and after consideration of plaintiff's age, education, and past work experience, as well as the testimony of a vocational expert, the Law Judge found that Ms. Williams retains sufficient functional capacity to work as a general office clerk, a cashier, and a security guard. (TR 22). Therefore, the Law Judge ultimately concluded that Ms. Williams is not disabled, and that she is not entitled to disability benefits. See 20 C.F.R. § 404.1520(g). Ms. Williams filed a request for review with the Social Security Administration's Appeals Council. On April 12, 2007, the Appeals Council denied Ms. Williams's request for review and adopted the Law Judge's opinion as the final decision of the Commissioner. Having exhausted all available administrative remedies, Ms. Williams now appeals to this court.

While the plaintiff may be disabled for certain forms of employment, the crucial factual

3

determination is whether the plaintiff is disabled for all forms of substantial gainful employment. See 42 U.S.C. § 423(d)(2). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills and age. Vitek v. Finch, 438 F.2d 1157, 1159-60 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is unable to conclude that the Commissioner's final decision is supported by substantial evidence. As outlined above, the Administrative Law Judge decided this case at the fifth and final stage of the sequential disability analysis set forth under 20 C.F.R. § 404.1520. Having found Ms. Williams disabled for past relevant work, the Law Judge relied on the testimony of a vocational expert in assessing plaintiff's capacity to perform alternate work roles, given the plaintiff's particular combination of age, education and prior work experience, and considering the residual functional capacity limitations as found by the Law Judge. Unfortunately, the hypothetical question put to the vocational expert did not fully set forth the limitations associated with the plaintiff's depression, or affective disorder. Stated differently, the court is unable to conclude that the hypothetical question put to the vocational expert was complete, or that there is substantial evidence to support the Law Judge's reliance on the vocational expert's testimony in assessing plaintiff's capacity for alternate work activity. In such circumstances, the court is constrained to conclude that there is "good cause" for remand of this case to the Commissioner for further development and consideration.

4

The medical record in this case confirms that Ms. Williams suffers from depression. (TR 267, 294-300, 302-12, 318-20, 350-53). Although Ms. Williams had previously suffered from severe depression in 2000 and 2001, she did not seek treatment again until April of 2005 when she began treatment with Dr. Roy Crouse. (TR 302). At that time, Dr. Crouse evaluated Ms. Williams at 55 on the Global Assessment of Functioning Scale.[4] (TR 302). Dr. Crouse treated Ms. Williams on numerous occasions, noting that she suffers from chronic worry and severe anxiety (TR 312), as well as moderate depression (TR 306, 309). Dr. Crouse completed a medical assessment form on February 27, 2006 in which he indicated that Ms. Williams has fair and poor to no abilities across several different working categories and that she has significant impairments in concentration and short-term memory. Dr. Crouse's treatment notes from June and July of 2006 indicate that Ms. Williams continues to suffer from moderate to severe depression and experiences problems with concentration and memory. (TR 351-53).

On October 11, 2005, Dr. Robert Miller, a psychologist retained by Ms. Williams's attorney, prepared a psychological evaluation in which he noted that Ms. Williams has moderate depression causing a decreased ability to concentrate. (TR 296, 298). Dr. Miller evaluated Ms. Williams at 45 on the Global Assessment of Functioning Scale. (TR 298). Dr. Miller also completed a medical assessment form in which he indicated that Ms. Williams has fair and poor to no abilities across several different working categories. (TR 299-301).

Although the Law Judge recognized that Dr. Crouse was Ms. Williams's treating

---

[4] The global assessment of functioning is used to report the clinician's judgment of the subject's overall level of functioning. A score of between 41 and 50 is indicative of serious symptoms or any serious impairment in social, occupational or school functioning. A score of between 51 and 60 is indicative of moderate symptoms or moderate difficulty in social, occupational, or school functioning. American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders*, Fourth Edition. Washington, DC, American Psychiatric Association, 1994. P. 44-47.

Case 7:07-cv-00290-GEC   Document 14   Filed 02/25/08   Page 5 of 9   Pageid#: 67

physician, he gave limited weight to Dr. Crouse's opinions as expressed in the February 27, 2006 medical assessment which indicated that the plaintiff had poor to no abilities across most areas required to make occupational and personal-social adjustments. (TR 20). The court finds that the Law Judge's opinion with regard to the weight given to this report is supported by Dr. Crouse's treating notes in which he expresses the opinion that Ms. Williams suffers from only moderate depression. The Law Judge also gave very little weight to the report of Dr. Miller because he was not a treating psychologist and his opinion was not supported by the medical evidence as reflected in Dr. Crouse's ongoing treatment notes. (TR 20). Nevertheless, the Law Judge did find that Ms. Williams experiences certain limitations caused by her depression including mild restrictions in activities of daily living; mild difficulties in maintaining social functioning; and moderate deficiencies of concentration, persistence or pace. (TR 18).

In his questioning of the vocational expert, however, the Law Judge addressed Ms. Williams's physical and mental impairments as follows:

> Q: I'd like you to assume an individual the claimant's age, education and background and experience, the individual has limitations indicated in the state agency residual functional capacity evaluation at Exhibit 14F. Those limitations are as follows: the individual has the ability to lift 20 pounds occasionally, ten pounds more frequently, stand or walk with normal breaks for at least six hours in an eight hour day, sit with normal breaks for six hours in an eight hour day, be able to push, pull and handle items but there would be some limitation in the lower extremities in pushing and pulling. The individual would never be able to climb ladders, ropes or scaffold, would be able to climb ramps and stairs. Individual could occasionally balance, occasionally stoop, frequently kneel, occasionally crouch and frequently crawl. Individual would have limited opportunity or ability to reach in all directions, unlimited ability to perform gross manipulation, fine manipulation and feeling would not be reduced. The individual would have no [INAUDIBLE] limitations, no environmental limitations. If I find the individual with those limitations and the claimant's age, education, background and experience, would such an individual be employable in the claimant's past work?

6

A: No, sir.

Q: Would there be jobs that such an individual could perform?

A: Yes, that's a full range of light work, it would be unskilled work.

. . .

Q: If I added a need to be able to change positions hourly, for a brief period, alternate between sitting and standing, stand for an hour, sit for a few minutes, then work and sit for an hour and then stand for a few minutes, could alternate, and be able to walk at least two blocks, would that have any impact on the jobs identified?

A: I think the main impact would be in the cashier's, that's not always available to sit, but security guards, general office clerks, that shouldn't be an issue and she's not leaving her work station.

. . .

Q: If I add to these limitations an affective disorder at the mild to moderate level, the individual would also have a pain in mild to moderate level, but the individual would be able to read, understand and follow plot lines and story lines in spite of the affective disorder or the pain levels. Would that impact on the unskilled jobs you've identified?

A: From a vocational standpoint, you know, when you said pain.

Q: The impact, the individual, even with the pain or affective disorder would be able to read novels, follow plot lines, understand what's, what one is reading, would that –

A: So –

Q: – the level that would interfere with the performance of the unskilled jobs?

A: With regard to reading and understanding and following plot lines, there would be no issue. Unskilled work is, you know, pretty much tasks.

(TR 380-83).

Although the Law Judge found that Ms. Williams experiences moderate deficiencies of
7

concentration, persistence or pace, he failed to include these limitations in the hypothetical question posed to the vocational expert. Instead, he asked a broad and somewhat vague question which included only the limitation of an affective disorder at the mild to moderate level with the ability to understand and follow plot and story lines. The question posed simply fails to properly describe the limitations resulting from Ms. Williams's mental impairments as found by the Law Judge.

Although the Commissioner argues that these limitations were not actually included in the Law Judge's findings with regard to Ms. Williams's residual functional capacity, the court finds this assertion to be without merit. The limitations described immediately follow the Law Judge's description of Ms. Williams's physical limitations, and the language used specifically describes the "limitations caused by the claimant's psychologically based symptoms." (TR 18). Therefore, the court concludes that the hypothetical question put to the vocational expert was incomplete and deficient in that it failed to fully set forth the work-related mental processes affected by the plaintiff's depression.

In Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989), the United States Court of Appeals for the Fourth Circuit commented as follows:

> The purpose of bringing in a vocational expert is to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform. In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments.

(citations omitted).

Inasmuch as the hypothetical question put to the vocational expert in this case did not include any of the specific limitations found by the Law Judge to be caused by the plaintiff's

8

depression, the court concludes that the Law Judge's reliance on the vocational expert's testimony in finding residual functional capacity for specific, alternate work roles is not supported by substantial evidence. The court believes that it is necessary to remand this case so that proper and comprehensive hypothetical questions can be put to a qualified vocational expert. It can then be determined whether Ms. Williams can perform alternate work roles existing at the light level, given her particular combination of exertional and nonexertional limitations, as well as her age, education, and past work experience. See generally 20 C.F.R. § 404.1520(g).

For the reasons stated, the court finds that the plaintiff has established "good cause" for remand of her case to the Commissioner for further development and consideration. See 42 U.S.C. § 405(g). An appropriate order of remand will be entered this day. Upon remand, the Commissioner shall conduct a new administrative hearing, at which both sides will be allowed to present additional evidence and argument.

The Clerk is directed to send certified copies of this opinion to all counsel of record.

ENTER: This 25th day of February, 2008.

_____
United States District Judge